UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ARTHUR J. GALLAGHER & CO.                    CIVIL ACTION

V.                                           NO. 17-2825

BRIAN D. O'NEILL                             SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court is Arthur J. Gallagher & Co.'s Rule 12(b)(6) motion to dismiss Brian D. O'Neill's counterclaim. For the following reasons, the motion is GRANTED.

**Background**

This lawsuit arises out of an alleged breach of employment agreements. On June 14, 2017, the Court issued an Order and Reasons discussing the relevant facts leading to the lawsuit.

Briefly, Brian O'Neill worked for Gallagher until May 27, 2016; he then began employment with one of Gallagher's competitors, Marsh USA. During his employment with Gallagher, O'Neill executed two employment agreements with Gallagher. Relevantly, the agreements precluded O'Neill from competing with Gallagher in specific geographic areas for two years after the term of his employment with Gallagher. Because O'Neill took a position with a Gallagher competitor and allegedly began soliciting business from Gallagher customers, Gallagher filed a lawsuit for injunctive relief, breach of contract, misappropriation of trade secrets, and

breach of the duty of good faith. O'Neill filed a motion to dismiss Gallagher's claims; the Court denied that motion.

Then, in O'Neill's answer to Gallagher's complaint, O'Neill filed a counterclaim against Gallagher. O'Neill's counterclaim alleges that Gallagher interfered with O'Neill's contractual or business relations and that the employment agreements are void. Gallagher now moves the Court to dismiss O'Neill's counterclaim under Federal Rules of Civil Procedure Rule 12(b)(6) for failing to state a claim.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at
678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Thus, in considering a Rule 12(b)(6) motion, the Court
"accepts 'all well-pleaded facts as true, viewing them in the light
most favorable to the plaintiff.'" See Martin K. Eby Constr. Co.
v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting
Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). But, in
deciding whether dismissal is warranted, the Court will not accept
conclusory allegations in the complaint as true. Kaiser, 677 F.2d
at 1050. Indeed, the Court must first identify allegations that
are conclusory and thus not entitled to the assumption of truth.
Iqbal, 556 U.S. at 678-79. A corollary: legal conclusions "must
be supported by factual allegations." Id. at 678. Assuming the
veracity of the well-pleaded factual allegations, the Court must
then determine "whether they plausibly give rise to an entitlement
to relief." Id. at 679.

"'To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d
600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678) (internal
quotation marks omitted). "Factual allegations must be enough to
raise a right to relief above the speculative level, on the
assumption that all the allegations in the complaint are true (even
if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and

footnote omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" thus "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings."  That is, any documents attached to or incorporated in the plaintiff's complaint that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)).  Also, the Court is permitted to

consider matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment.  See United States ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003).

## II. Enforceability of Employment Contracts

*A.*

The threshold determination of whether O'Neill states a valid claim against Gallagher is whether the employment agreements' non-compete clauses O'Neill entered into during his Gallagher employment are valid and enforceable. O'Neill contends they are not.

During O'Neill's employment he entered into an "Executive Agreement" and a Stock Option Award agreement. For purposes of this motion, the Executive Agreement provides:

> [T]he Executive [O'Neill] understands and agrees that for a period of two (2) years following the termination of his employment for any reason whatsoever, he will not (i) directly or indirectly within the Company Business Area (as defined below), solicit, place, accept, aid, counsel or consult in the renewal, discontinuance or replacement of any insurance or reinsurance by, or handle self-insurance programs, insurance claims or other insurance administrative functions ("insurance services") for, any existing Company account or any actively solicited prospective account of the Company for which he performed any of the foregoing functions during the two-year period immediately preceding such termination or (ii) provide any employee benefit brokerage, consulting, or administrative services, in the areas of group insurance, defined benefit and defined contribution pension plans, human resources and staffing services, individual life, disability and capital accumulation products, and all other employee

5

> benefit areas ("benefit services") the Company is
> involved with, for any existing Company account or any
> actively solicited prospective account of the Company
> for which he performed any of the foregoing functions
> during the two-year period immediately preceding such
> termination. …

Exhibit A to the Executive Agreement specifies 37 Louisiana
parishes as constituting the "Company Business Area," referred to
in the Executive Agreement. Finally, the Executive Agreement also
contains a severability clause, which provides:

> The provisions of this Agreement are intended to be
> interpreted and construed in a manner which makes such
> provisions valid, legal and enforceable. In the event
> any provision of this Agreement is found to be partially
> or wholly invalid, illegal or unenforceable, such
> provision shall be modified or restricted to the extent
> and in the manner necessary to render such provision
> valid, legal and enforceable. It is expressly understood
> and agreed between the parties that this modification or
> restriction may be accomplished by mutual accord between
> the parties or, alternatively, by disposition of a court
> of law. If such provision cannot under any circumstances
> be so modified or restricted, it shall be excised from
> this Agreement without affecting the validity, legality
> or enforceability of any remaining provisions.

Similar to the Executive Agreement, O'Neill's Stock Option Award
Agreement includes in Paragraph 20:

> (a)(i) If, at any time within (A) the seven-year term of
> this grant; (B) two years after the termination of
> employment; or (C) two years after the Participant
> exercises any portion of this grant, whichever is the
> latest, the Participant, in the determination of the
> management of the Company, engages in any activity in
> competition with any activity of the Company, or
> inimical, contrary or harmful to the interests of the
> Company, including, but not limited to:

(1) conduct related to his or her employment for which either criminal or civil penalties against him or her may be sought;

(2) violation of Company policies, including, without limitation, the Company's Global Standards of Business Conduct and Insider Trader Policy;

(3) directly or indirectly, soliciting, placing, accepting, aiding, counseling or providing consulting for any Insurance Services for any existing Company Account or any actively solicited Prospective Account of the Company for which he or she performed any of the foregoing functions during the two-year period immediately preceding such termination; or providing Benefit Services the Company is involved with, for any existing Company Account or any Prospective Account of the Company for which the Participant performed any of the foregoing functions during the two-year period immediately preceding such termination…

then this grant of stock options and all other grants of stock options held by the Participant shall terminate effective as of the date on which the Participant enters into such activity, unless terminated sooner by operation of another term or condition of this Agreement or the Plan… .

The Stock Option Award, however, does not separately define the Participant's geographic limitations in competition for the agreed upon two-year term. Instead, it incorporates the geographic limits set forth in the Executive Agreement in its definition for "Company Account" as referenced in the clawback provision. The Stock Option Award agreement defines "Company Account" to

include all users of insurance services or benefit services including commercial and individual consumers, risk managers, carriers, agents and other insurance intermediaries; **provided, that, if the Participant is employed by the Company in, or primarily performing work for the Company in LOUISIANA**, Company Accounts are further limited to the users of insurance services or benefits services within those parishes and

7

municipalities designated in an exhibit to the
Participant's employment agreement with the Company.

Therefore, both employment agreements' non-compete provisions
specifically reference geographic limitations, as required under
Louisiana law.

*B.*

"Louisiana has historically had a strong public policy
against any employment contract that prohibits an employee from
competing with a former employer." Lemoine v. Baton Rouge Physical
Therapy, L.L.P., 135 So. 3d 771, 773 (La. Ct. App. 12/27/13); see
Louisiana Smoked Products, Inc. v. Savoie's Sausage & Food Prods.,
Inc., 696 So. 2d 1373, 1379 (La. 1997). This policy of restricting
non-competition agreements was based on an underlying desire to
prevent an individual from contractually depriving himself of the
ability to support himself and consequently becoming a public
burden. See McAlpine v. McAlpine, 679 So. 2d 85, 91 (La. 1996).

Louisiana Revised Statute 23:921 provides:

A. (1) Every contract or agreement, or provision
thereof, by which any is restrained from exercising a
lawful profession, trade, or business of any kind,
except as provided in this Section, shall be null and
void. However, every contract or agreement, or provision
thereof, which meets the exceptions as provided in this
Section, shall be enforceable. …
C. Any person, including a corporation and the
individual shareholders of such corporation, who is
employed as an agent, servant, or employee may agree
with his employer to refrain from carrying on or engaging
in a business similar to that of the employer and/or
from soliciting customers of the employer within a
specified parish or parishes, municipality or

8

municipalities, or parts thereof, so long as the
employer carries on a like business therein, not to
exceed a period of two years from termination of
employment. …
D. For the purposes of Subsections B and C of this
Section, a person who becomes employed by a competing
business, regardless of whether or not that person is an
owner or equity interest holder of that competing
business, may be deemed to be carrying on or engaging in
a business similar to that of the party having a
contractual right to prevent that person from competing.

Louisiana courts and this Circuit have interpreted the
effects of Agreements which incorporate overly broad and over-
encompassing geographic limitation provisions. Courts have
determined that overly broad geographic restrictions do not render
an entire agreement unenforceable when there is a severability
clause. Through the severability clause, courts will construe the
restriction enforceable as to the relevant parishes or geographic
areas affecting the parties; the agreement will be deemed invalid
and unenforceable as to the geographic locations deemed to not be
relevant to the agreement.

For example, in Arthur J. Gallagher & Co. v. Babcock, the
Fifth Circuit interpreted a non-compete agreement that included
all 64 of Louisiana's parishes as part of the geographic
limitation. 703 F.3d 284, 292 (5th Cir. 2012). The Court held that
the provision was "not invalid merely because [it] attempted to
reach every Louisiana parish." Id. The Court upheld the district
court's holding that eliminated the 55 parishes in which Gallagher

9

did not provide the specific services that were relevant to that non-compete agreement. Id. The Court notably went on to reject the argument that naming all 64 of Louisiana's parishes "was so egregious that it render[ed] the covenant invalid as to all sixty-four parishes instead of just the fifty-five as noted by the district court." Id. The Court found it specific enough that the agreement listed specific parishes rather than claiming a geographic scope of "anywhere the employer does business." Id.

Here, O'Neill's Executive Agreement specifically references 37 Louisiana parishes. O'Neill contends that the Agreement's geographic reach is too broad and the Executive Agreement is null and void. However, O'Neill does concede that at least seven, of the 37 parishes included, are parishes where Gallagher does business. As discussed, the mere fact that Gallagher's geographic list may have been overly broad does not deem the entire non-compete clause of the Executive Agreement void. See id. Rather, the precedent instructs that this Court should construe the Agreement's non-compete clause enforceable as to the relevant geographic areas included in the Agreement. See LA. REV. STAT. ANN. § 23:921; Arthur J. Gallagher, 703 F.3d at 292; Lemoine, 135 So. 3d at 774. The Court recognizes that Gallagher has met the requisite specificity of the Louisiana statute by specifically enumerating Louisiana parishes to which it wanted the non-competition agreement to be enforced. Therefore, O'Neill's

contention that the non-competition provision of the Executive Agreement is void is without merit.

The Court must next consider the validity of the non-compete clause in the Stock Option Award. The Stock Option Award's non-compete clause similarly prevents O'Neill from soliciting business from a Gallagher account or client for two years after termination of his employment with Gallagher, if he worked on that company account within the two years before his termination. And, the Stock Option Award incorporates the same geographic scope as the Executive Agreement, through the definition of "Company Account" as referenced in the Stock Option Award's non-compete clause.

Because the Stock Option Award incorporates the geographic limitations discussed above in the employment agreement, the same reasoning applies here. O'Neill's argument that the over-inclusive nature of the restriction deeming the non-compete clause void is again of no avail here. Therefore, to the extent that Gallagher performs the requisite insurance services in some, or all, of the referenced parishes included in the agreement, the non-compete clause is effective as to those parishes.

III.

Next, the Court must determine whether O'Neill states a valid claim for interference with contractual or business relationships. In its motion to dismiss, Gallagher contends that under Louisiana law, O'Neill fails to state a claim for interference with a

11

contractual relationship because O'Neill's claim is against a corporation and not an officer. In response, O'Neill submits that he does state a valid claim for interference with a business relationship. It also appears that he attempts to argue that courts use "business relations" and "contractual relations" interchangeably, as it refers to a claim for interference. However, O'Neill fails to clarify how this should directly affect the issue currently before the Court.

*A.*

Under Louisiana state law, to state a valid claim for interference with contractual relations, the plaintiff must allege:

> (1) the existence of a contract or legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

9 to 5 Fashions, Inc. v. Spurney, 538 So. 2d 228, 234 (La. 1989). The underlying requirement for a contractual relation interference claim, however, is that it is "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." Id. Therefore, the plaintiff must allege this claim against a corporate

*officer*, not the corporation itself. <u>See</u> <u>id.</u> Here, O'Neill's counterclaim is against a corporation, Gallagher. His counterclaim is void of any allegations against a specific corporate officer.

O'Neill further contends that Gallagher's attempt to enforce agreements, namely the non-compete provisions of two agreements, that are void is a clear demonstration of willful intent on behalf of Gallagher. Such willful intent supports O'Neill's claim for interference with a business relation, O'Neill submits. Conversely, Gallagher contends that its request to enforce an enforceable and valid non-compete and non-solicitation agreement necessarily means it could not have acted with the requisite willful intent that O'Neill alleges.

O'Neill relies on <u>Gearheard v. De Puy Orthopedics, Inc.</u>. No. 99-1091, 2000 WL 533352 (E.D.La. Mar. 17, 2000). The court in <u>Gearheard</u> allowed a former employee to bring a claim for inference with contractual relations when a former employer sought to enforce an invalid non-compete agreement. <u>Id.</u> at *7-8. O'Neill's reliance is misplaced. The crux of the court's finding in <u>Gearheard</u> was that the former employer sought to enforce an *invalid* non-compete. <u>See</u> <u>id.</u> Here, the Court has determined that on the record before it, Gallagher attempts to enforce valid non-compete agreements.

O'Neill's counterclaim also attempts to make claims for interference with contractual relations *and* business relations. Paragraph 18 of O'Neill's counterclaim provides: "Because

13

Gallagher has attempted to restrain O'Neill's personal services pursuant to agreements that lack the statutorily required scope, Gallagher has intentionally interfered with O'Neill's employment relationship with his current employer and is liable therefor." Paragraph 19 goes on to claim: "Gallagher's attempt to enforce an agreement that is clearly void on its face demonstrates a willful intent on Gallagher's part to interfere with O'Neill's contractual relations. …" The Court must next consider the viability of O'Neill's claim for interference with business relations.

*B.*

"'Louisiana law protects the businessman from malicious and wanton interference, permitting only interferences designed to protect a legitimate interest of the actor.'" Junior Money Bags, Ltd. v. Segal, 970 F.2d 1, 10 (5th Cir. 1992) (quoting Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 601 (5th Cir. 1981)) (internal quotations omitted). "'Thus, the plaintiff in a tortious interference with business suit must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.'" Junior Money Bags, 970 F.2d at 10 (quoting McCoin v. McGehee, 498 So. 2d 272, 274 (La. App. 1st Cir. 1986)). Where a plaintiff has made no showing that an officer or a corporation influenced third parties not to do business with the plaintiff (former employee), the plaintiff has not stated a claim for tortious interference with business relations under Louisiana

14

law. See Junior Money Bags, 970 F.2d at 10-11; McCoin, 498 So. 2d at 274 (citing Utisca Enterprises, Inc. v. Costello, 434 So. 2d 137, 140 (La. App. 5th Cir. 1983)).

Again, O'Neill's claim for interference with business relations must fail. To state a claim for interference with business relations, the plaintiff must prove that the former employer "'improperly influenced others not to deal with the plaintiff.'" Junior Money Bags, 970 F.2d at 10 (quoting McCoin, 498 So. 2d at 274). O'Neill's counterclaim fails to even attempt to allege that Gallagher "improperly influenced" a third party from dealing with him. The record on this is silent. Therefore, O'Neill patently fails to state a claim for interference with business relations, to the extent he seeks to allege this as a separate claim.

Accordingly, IT IS ORDERED: that Gallagher's motion to dismiss O'Neill's counterclaim with prejudice is GRANTED.


New Orleans, Louisiana, July 26, 2017

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE


15